**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**IRY JAMES WILLIAMS,**

       **Plaintiff,**

**v.**                                 **CIVIL ACTION NO.: 3:24-CV-10
(GROH)**

**UNITED STATES OF AMERICA,**

       **Defendant.**

## <u>REPORT AND RECOMMENDATION</u>

### I.  INTRODUCTION

On October 25, 2023, the *pro se* Plaintiff, who is a federal prisoner incarcerated at USP Hazelton, in Bruceton Mills, West Virginia, initiated this case by filing a complaint in the United States District Court for the District of Columbia. ECF No. 1.[1] The case was transferred to this jurisdiction on January 25, 2024. ECF No. 6. Upon docketing the complaint, the Clerk of Court issued a Notice of Deficient Pleading and Intent to Dismiss because the complaint was not filed on the Court-approved form, and on February 1, 2024, an Amended Notice of Deficient Pleading and Intent to Dismiss was issued. ECF Nos. 7, 9. On February 27, 2024, the Plaintiff refiled his complaint on the Court-approved form. ECF No. 11. On his form complaint, the Plaintiff claims he is entitled to damages pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, for acts which he alleges occurred while he was incarcerated at USP Hazelton in

---

[1] All CM/ECF numbers cited herein are from the instant case, 3:24-CV-10, unless otherwise noted.

the Northern District of West Virginia. ECF No. 11 at 1. However, he alleges that the medical staff at George Beto Unit, a state prison in Texas, failed to provide " . . . 'any' medical attention to serious medical need. . . " Id. at 7–8. Further, he asserts that the Defendant failed to "act in performance" in response to his Standard Form 95. Id. at 8. The Plaintiff paid the initial partial filing fee on May 7, 2024. ECF No. 23.

The matter is now before the undersigned for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the complaint be denied and dismissed with prejudice as to the Plaintiff's claims.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Claims in the Complaint

The complaint alleges three claims for relief, that: (1) Sgt. Dinia Green neglected her duties to the Plaintiff when she failed to prevent "excessive risk of danger" to the Plaintiff's health after he reported his ingestion of possibly contaminated water, and further, that the actions of Sgt. Green, Warden William J. Wheat, Warden Keith Gorsuch and the Bureau of Prisons form a basis for this claim [ECF No. 11 at 7]; (2) Nurse Utende, P.A. Cynthia Goins, P.A. Steven Ciszewski, Beto Medical Staff, the Bureau of Prisons, and George Beto Unit (State Prison in Texas), failed to provide the Plaintiff with medical attention for his serious medical need, and/or delayed medical care for his serious medical need [Id. at 7–8]; and (3) Federal Tort Claims Act Staff, Hope L. Swann, and the United States Department of Justice failed to perform their duties to respond to the Plaintiff's Standard Form 95 for more than 669 days [Id. at 8–9].

As a result, the Plaintiff contends that he suffers from: (1) "multi-degenerative

2

disease and spondylosis with disc bulging," that has confined him to a wheelchair for more than two years; (2) "continual stomach problems"; (3) GERD (gastroesophageal reflux disease) with spot bleeding; (4) pulmonary conditions[2] which require daily medication; and (5) H. pylori which lasted for months. Id. at 10. The Plaintiff seeks: (1) entry of default judgment against the Defendant based on the "failure to 'act in performance'" in relation to the Plaintiff's filed administrative remedy; and (2) a damage award of ten million dollars. Id.

**B.     The Plaintiff's Response to the Notice of Deficient Pleading**

On February 27, 2014, the same date he filed his amended complaint, the Plaintiff filed a "Response to the Notice of Deficient Pleading and Correcting Plaintiff's Intention," and a 29-page memorandum of law in support thereof. ECF Nos. 15, 15-1.

In his Response, the Plaintiff asserts, "[t]he issue at hand is not in the terms of a State matter NOR is Plaintiff intending to direct issues in the form of a COMPLAINT to be adjudicated for violations of civil rights, but [the] sole purpose is the entry of default against defendant[ ]." ECF No. 15 at 2. The Plaintiff contends that the Defendant failed to answer or otherwise respond to the SF-95 he filed, and accordingly, he is entitled to the entry of default related to his claims of inadequate medical treatment for his serious medical needs as asserted therein. Id. at 3–6.

In his memorandum, the Plaintiff states that he was "borrowed" from State custody by federal authorities. ECF No. 15-1 at 1. The Plaintiff further claims that the "Texas Department of Criminal Justice is an Agency of Texas, which is a Department of the United States." Id. at 2. Additionally, the Plaintiff asserts that the "TDCJ's Medical

---

[2]  The Plaintiff asserts that failure to take daily medication results in "a continual lung infection," and that he has twice acquired pneumonia. ECF No. 11 at 10.

3

UTMP (University of Texas Medical Branch) being recipient of federal funds concede to federal regulations." Id.

### C. Motion for More Definite Statement and Response

Following the May 8, 2024, issuance of an Order [ECF No. 24] to Answer or Otherwise Plead, on May 20, 2024, the Defendant filed a Motion for a More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e). ECF No. 31. Therein, the Defendant asserted that the Complaint fails to make clear:

> a. Whether Plaintiff filed one, or numerous, SF-95s relating to the instant FTCA Complaint and the Claim Number(s) associated with the relevant claims, see Doc. 11 at 5;
>
> b. Whether the instant FTCA Complaint involves the BOP and/or individuals who are employed by other government agencies, see id. at 5-6. For example, Plaintiff identified the "US Department of Justice, Civil Division, Torts Branch" as the specific government agency where he filed notice of the claim but makes no mention of the BOP, see id. at 6. Plaintiff also appears to make claims against "Hope L. Swann" of the "Federal Tort Claims Act Staff," , see id. at 8;
>
> c. Which BOP or other facility the numerous named individuals, including "Sgt. Dinia Green," "Warden William J Wheat," "Warden Keith Goruch" [sic], "Nurse Utunde" [sic], "Cynthia Goins," "Steven Ciszewski," "Beto Medical Staff" – all of whom appear to be employed with the Texas Department of Criminal Justice – were employed at the time giving rise to the claims alleged in the Complaint, see id. at 8; and
>
> d. Which BOP or other facility Plaintiff was designated to at the time giving rise to the claims alleged in the Complaint.

ECF No. 31 at 2.

The Plaintiff responded on June 10, 2024, with "A More Definite Statement and Memorandum in Support of Default and Complaint." ECF No. 32. Among other

contentions, the Plaintiff asserts that: (1) the "Texas Department of Criminal Justice . . . is an agency of Texas, which is a Department of the United States" [Id. at 2]; (2) Supreme Court precedent states that "ANY employee of the Government while acting within the scope of his office or employment" justifies a claim under the FTCA[3] [Id. at 3 (emphasis in original)]; (3) the Texas Department of Criminal Justice "primarily acted as [an] instrumentality or agency of the United States" [Id. at 3]; (4) the Plaintiff "was confined in state custody" [Id.]; (5) the named individuals—Dinia Green, Warden William J. Wheat, Warden Keith Gorsuch, Nurse Utende, Cynthia Goins, Steven Ciszewski, and Beto Medical Staff—were "employed at the time of concern, with [the] Texas Department of Criminal Justice," although the Plaintiff contends that those individuals were acting as instrumentalities or agency of the United States [Id. at 4]; (6) the Plaintiff was in the primary custody of the Attorney General pursuant to a 2009 federal conviction, but "was erroneously sent to State Prison and not retrieved" [Id.]; (7) to "be an employee of the government includes merely 'primarily acting' as instrumentalities or [agencies] of the United States" [Id. at 8]; and (8) he "did not begin to receive medical care until [ ] June of 2021 [ ] when at FCI Pollock" [Id. at 9].

### D.    Motion to Dismiss for Failure to State a Claim

The Defendant filed a Motion to Dismiss for Failure to State a Claim, and memorandum in support thereof on June 11, 2024. ECF No. 34. Therein, the

---

[3] The cited passage specifies that the government employee must be an employee of the United States. "As a general rule, the United States is immune from claims for money damages in civil suits. *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 686–90, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). The FTCA waives the United States' sovereign immunity for civil suits for money damages 'for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.' "

Blanco Ayala v. United States, 982 F.3d 209, 214 (4th Cir. 2020) (quoting 28 U.S.C § 1346(b)(1)).

Defendant's sole argument asserts that the Plaintiff's claims concern wrongdoing of state employees, not federal employees, and that his claims occurred at George Beto Unit of the Texas Department of Criminal Justice. Id. at 3. The Defendant contends, "It is of no matter that Plaintiff alleges or believes the Texas Department of Criminal Justice 'is an agency of Texas, which is a Department of the United States,' or that the 'Texas Department of Criminal Justice…primarily acted as instrumentality or agency of the United States,' because those allegations are demonstrably false." Id., internal citations omitted. Further, the Defendant asserts that "Beto Unit is a prison within the Correctional Institutions Division of the Texas Division of Criminal Justice. . . . [which] is located in the City of Tennessee Colony, Anderson County, Texas." ECF No. 34 at 3. See https://www.tdcj.texas.gov/unit_directory/b.html.

The Defendant cites to Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 430 (1990), which provides that "[t]he FTCA provides authorization in certain circumstances for suits by citizens against the Federal Government for torts committed by [Federal] Government agents." ECF No. 34 at 4. The Defendant concludes that State actors cannot be sued under the FTCA, and thus the Plaintiff's claims against Texas State actors who are not employees or agents of the United States, fail to state an FTCA claim upon which relief can be granted. ECF No. 34 at 4.

### E.    The Plaintiff's Response to Motion to Dismiss

On June 26, 2024, the Plaintiff filed a Response styled "Memorandum in support of Objection to Respondent's Motion to Dismiss Plaintiff's Complaint," along with exhibits. ECF Nos. 41, 41-1 through 41-3. Therein, the Plaintiff states, "[b]y no means [ ] does Petitioner imply 'the Texas Department of Criminal Justice' is [a] part [of] the

Federal Bureau of Prisons. Nor indicating that state actions or actors are within the perimeters of the FTCA." ECF No. 41 at 2. The Plaintiff contends, "[r]ather, it is not the state actors, but the acting within the scope of his office or employment causing negligence or wrongful act or omissions, where the government of the United States, if a private person, would be liable to the claimant. . ." Id. Further, the Plaintiff asserts that "'Federal Agency', requisite colorable [elucidation], respectfully presents the nexus while implicitly reserving tort liability." Id., citing Ali v. Federal Bureau of Prisons, 552 U.S. 214 (2008). See also ECF No. 41 at 7. The Plaintiff continues that "the term 'any' officer covers all law enforcement officers." Id. Additionally, the Plaintiff states that "[p]ursuant to 28 U.S.C. § 2671, 'Employee of the government' includes (1) officers or employees of any federal agency . . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States." ECF No. 41 at 3 (emphasis in original), 10. The Plaintiff concludes that because he was in the primary custody of the Attorney General when he escaped from the RRC, that "it is the BOP's responsibility of duty to care." Id.

Liberally construed, the Plaintiff argues that while he was in the primary custody of federal authorities but the physical custody of the Texas Department of Criminal Justice, that Department and its employees, acted as agents of the federal government, and thus the federal government cannot elude tort liability under the FTCA for injuries the Plaintiff claims to have incurred from drinking contaminated bottled water. Id. at 3–5, 7. The Plaintiff asserts that, "[t]he only attempt at controversy From the United States in its [ ] rebuttal, was to mislead the court to Perceive Plaintiff's complaint as litigating a suit to state actors under the FTCA." Id. at 6. Further, the Plaintiff contends that the Defendant's

7

"'failure to state a claim' arguments Fall short of Persuasiveness as it pertains to "Texas Department of Criminal Justice' is an agency of the State of Texas, 'not the Federal Bureau of Prisons.' and fails to shift the burden of Proof and Persuasion to Plaintiff." Id. at 11. The Plaintiff explains that the Defendant "merely speculated . . . [an] assertion, that [the] United States was not responsible or retain Jurisdiction by 'Primary custody', and attempted to infer by divorced test, that claims were against state actors." Id. The Plaintiff argues that he has "not asserted, nor raised claims that [the] Texas Department of Criminal Justice is an agency of the Federal Bureau of Prisons with expectant liability." Id. The Plaintiff argues that "Defendants have created a fact issue which would preclude the granting of summary judgment on the issue" of whether the Texas Department of Criminal Justice is an agency of the Federal Bureau of Prisons. ECF No. 41 at 11. Further, according to the Plaintiff, "[t]he said Agency[4] unlawfully withheld action and failed to make a decision for over 35 months. Of which it was required to do." Id. at 7.

In the attached "Declaration in Support of FTCA" the Plaintiff asserts that on or about August of 2015, he was placed in a federal halfway house or Residential Reentry Center (RRC), in Midland, Texas to complete his 90-month term of incarceration imposed in the Western District of Texas, case number 7:09-CR-42.[5] ECF No. 41-2 at 1.

---

[4] It is unclear which agency the Plaintiff refers to. Several sentences earlier in the previous paragraph, the Plaintiff mentions the Attorney General and Bureau of Prisons. Construed liberally, the undersigned understands the "said Agency" to mean the Bureau of Prisons. See 28 C.F.R. § 14.2(b)(1) which provides that:

A claim shall be presented to the Federal agency whose activities gave rise to the claim. When a claim is presented to any other Federal agency, that agency shall transfer it forthwith to the appropriate agency, if the proper agency can be identified from the claim, and advise the claimant of the transfer. If transfer is not feasible the claim shall be returned to the claimant. The fact of transfer shall not, in itself, preclude further transfer, return of the claim to the claimant or other appropriate disposition of the claim. A claim shall be presented as required by 28 U.S.C. 2401(b) as of the date it is received by the appropriate agency."

[5] In that case the Petitioner was found guilty by a jury on May 12, 2009, of being a convicted

According to this Declaration, on or about February 28, 2016, the Plaintiff "decided not to return" to his halfway house assignment, and was arrested on March 5, 2016, by officers from the Midland County Sheriff's Department and United States Marshal Service. Id. The Plaintiff asserts he "was boarded in the Midland County Sheriff's Department ("MCSD"), although being a Federal inmate, later to be discovered as 'Administrative convenience' (in order to seem as though [he] was under 'primary custody' of state authorities, so the time spent in custody would not count towards Federal detention)." Id. The Plaintiff states that he was transferred from state custody with the MCSD to a federal facility, Odessa Detention Center ("Odessa") on or about April 27, 2016, until December 2016, when he was transferred for a psychological evaluation, and returned to Odessa around February of 2017. Id. According to the Plaintiff he remained at Odessa until he was sentenced on June 14, 2017. Id.

On or about June 14, 2017, the Plaintiff was sentenced to 260 months in federal prison. Id. at 2. The Plaintiff asserts that he was still under the "primary custody" of the Attorney General at the time of sentencing, and when the Judgment was entered on June 23, 2017. Id. According to the Plaintiff, he was transferred to state authorities on June 29, 2017, and was sentenced to a state term of ten years in September of 2017. Id. The Plaintiff remained in state custody, being transferred to state prison where he served five years before being paroled. Id. The Plaintiff states, "[w]hile in state custody, still under 'Primary custody' of 'Attorney General', [he] was subjected and succumb(ed) to

---

felon in possession of a firearm, and was sentenced on July 28, 2009, to 78 months of incarceration, to be served consecutively to the Petitioner's sentence imposed in 7:05-CR-083-01 in the Western District of Texas. W.D. Tex. 7:09-CR-42, ECF Nos. 49, 53. The Court of Appeals for the Fifth Circuit affirmed the Petitioner's conviction and sentence on April 20, 2010. W.D. Tex. 7:09-CR-42, ECF No. 65.

fatal[6] injuries, which [he] did not receive adequate medical care for." Id. The Plaintiff also acknowledged that he previously filed a civil rights action under § 1983[7] in the Eastern District of Texas, which was "ultimately denied." ECF No. 41-2 at 2.

The Plaintiff attached to his response: (1) a document styled "Memorandum to Courts" [ECF No. 41-1]; (2) a document styled "Declaration in Support of FTCA" which was signed by the Plaintiff, and dated June 23, 2024 [ECF No. 41-2]; (3) a docket sheet from the Western District of Texas, case number 7:16-CR-69, which contains the first ten entries in that case from February 29, 2016 through May 2, 2016[8] [ECF No. 41-3 at 1]; (4) page 7 of an 18-page transcript[9] from the Plaintiff's sentencing hearing in the Western District of Texas, case number 7:16-CR-68, [ECF No. 41-3 at 2]; (5) one page from a Federal Bureau of Prisons Discipline Hearing Officer Report from an incident date February 28, 2016,  [ECF No. 43-3 at 3]; (6) a letter from the United States Department of Justice, Civil Division, Torts Branch, Federal Tort Claims Act Staff dated September 30, 2021, which is signed by Hope L. Swann [ECF No. 41-3 at 4]; (7) a handwritten document styled "Notice of Fault and Opportunity to Cure" which is directed to the United States Department of Justice, Civil Division, Torts Branch, Federal Tort Claims Act Staff, signed by the Plaintiff, and date stamped June 5, 2023 [ECF No. 43-3 at 5]; (8) one page of a two-page Radiology Report from Central Louisiana Imaging Center for the Plaintiff

[6] The undersigned recognizes that the Plaintiff's characterization of his injuries being "fatal" is incorrect as the Plaintiff is alive, registered as an inmate with the Federal Bureau of Prisons who is housed at Hazelton USP, and actively litigating this case.

[7] This action is summarized in Section III. below.

[8] A review of the updated docket from that proceeding shows that the most recent entry is Plaintiff's "Motion to Correct Proceedings in Motion for Disqualification," filed on August 2, 2024, which the docket lists as "MOTION to Correct Docket Text re [ECF No.] 69 MOTION for Request of Disqualification Pursuant to 28 U.S.C. § 455, 144." W.D. Tex. 7:16-CR-69, ECF No. 75.

[9] The full sentencing transcript can be found at W.D. Tex. 7:16-CR-68, ECF No. 47.

10

for an exam date of January 7, 2022, for a procedure listed as "STITCHES/THORAX W CONT" [ECF No. 41-3 at 6]; and (9) one page of another two-page Radiology Report from Central Louisiana Imaging Center for the Plaintiff for an exam date of January 7, 2022, for a procedure listed as "MRI/SPINE LUMBAR WO" [ECF No. 41-3 at 7].

### F.    Defendant's Reply

The Defendant filed a reply on July 9, 2024, which contends that the Plaintiff failed to "meaningfully address the arguments raised in the pending Motion to Dismiss." ECF No. 42 at 1. Further, the Defendant argues that the Plaintiff presents no evidence or explanation to support his assertion that he was in the primary custody of the Attorney General at the time the alleged tortious conduct occurred because agents of the Texas Department of Criminal Justice "primarily acted as instrumentalities or agency of the United States." Id. at 1–2. The Defendant further argues that:

> Even if Plaintiff had escaped from a federal RRC and was subsequently placed in a Texas facility where the alleged tortious conduct occurred, the applicable analysis here is whether an employee of agent of the United States negligently caused injury to Plaintiff while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the laws of the State of Texas. . . . The answer is no.

Id. at 2. The Defendant further asserts that the Plaintiff's reliance on Evans is "misplaced and inapplicable" because "Evans was a criminal case that considered whether a defendant was in federal custody for purposes of sustaining an escape charge under 18 U.S.S. § 751(a)." Id. In conclusion, the Defendant contends that the Plaintiff failed to establish subject matter and personal jurisdiction, and "[t]hroughout his pleading, Plaintiff admits that these alleged torts occurred in Texas but fails to establish

why this Court has personal jurisdiction over state actors in Texas." Id. at 3.

### G.    Plaintiff's Reply to Respondent's Response to the Motion to Dismiss

On July 31, 2024, the Plaintiff filed a "Reply to Respondents [sic] Response of Motion to Dismiss."[10] ECF No. 45. The Plaintiff contends that he refused to respond to "meaningless assertions of claims not alleged." Id. at 1. Further, the Plaintiff contends that he "does not allege tortious conduct against Texas state actors." Id. The Plaintiff reiterates arguments previously made regarding the definition of the term "any," and the application of that term to all law enforcement officers. Id. at 2. Further, the Plaintiff asserts that where the United States failed within six months to appear or controvert his Standard Form 95 seeking ten million dollars in damages. Id. at 2–3.

According to the Plaintiff, the Fourth Circuit has held that "a criminal conviction may be used as conclusive proof of some issues in a subsequent litigation." Id. at 3. To that end, the Plaintiff asserts that the criminal case of United States v. Evans 159 F.3d 908, 912 – 13 (4th Cir. 1988),[11] supports his contention that "primary custody remained

---

[10]    The undersigned recognizes that under Local Rule of Prisoner Litigation Procedure 11(d), "Surreply and surrebuttal memoranda may not be filed." Nonetheless, the Plaintiff's "reply" which is in actuality as surreply, is considered herein.

[11]    In Evans, Evans appealed his conviction for escape from federal custody in the Northern District of West Virginia. A United States Probation Officer in this district filed a petition for revocation of Evans's supervised release. Following the issuance of an arrest warrant, Evans was arrested in Iowa, and subsequently transported back to this district by the United States Marshal Service. While incarcerated in a state facility, the Central Regional Jail, a West Virginia State Circuit Judge issued a writ of habeas corpus ad prosequendum to allow the State to prosecute grand larceny charges against Evans. The writ directed the United States Marshal Service to deliver Evans to the custody of the sheriff of Harrison County, West Virginia. On July 23, 1995, Evans was transported to the Harrison County Jail, where he suffered a medical emergency which led to his hospitalization. Evans escaped from the hospital and was a fugitive until he was arrested more than five months later. During his period as a fugitive Evans was indicted in this district, and upon his arrest was tried and convicted by a jury of escape from custody, and was sentenced to imprisonment for sixty months. The Fourth Circuit affirmed the judgment of the district court, holding that "the term of supervised release, the revocation of that term, and any additional term of imprisonment imposed for violating the terms of the supervised release are all part of the original sentence." 159 F.3d at 913.

12

vested in the sovereign that first arrests the individual until it relinquishes its priority." Id. at 3–4. The Plaintiff argues that in his case "federal authorities attempted to overshadow primary custody and board Plaintiff in [a] state facility to appear that state would obtain and retain primary jurisdiction[, by] filing ad prosequendum as if primary jurisdiction has been exhausted or relinquished, which [it] had NOT." Id. at 5. The Plaintiff concludes that the "tortious conduct is not on the Actions of Texas Department of Criminal Justice and its employees but of the tortious conduct[ ] delegated to the BOP by the Attorney General . . . which was established by jurisdiction in Plaintiff's convictions," which in turn grants this Court jurisdiction to adjudicate his claims under the FTCA. Id. at 5 – 6.

### III.    PRIOR CLAIMS FILED UNDER 42 U.S.C. § 1983[12]

On October 23, 2020, the Plaintiff filed a § 1983 action in the Eastern District of Texas, case number 6:20-CV-566. E.D. Tex. 6:20-CV-566, ECF No. 1. An amended complaint filed on January 4, 2021, names as Defendants: (1) Andrew Peykos, Sr. CEO, Niagara Water; (2) Andy Peykos II, President of Niagara Water; (3) Lorie Davis, Director Correctional Institute Division; (4) Keith E. Gorsuch, Warden at George Beto Unit ("Beto") of the Texas Department of Criminal Justice; (5) William Wheat, Assistant Warden at Beto; (6) Dinia Green, Sergeant of Corrections at Beto; (7) Brenda Plantt, Commissary Staff at Beto; (8) "Nurse" Utende at Beto; (9) Cynthia Goins, Physical Assistance at Beto; (10) "Dr. John Doe" at Beto; (11) Steven Ciszewski, P.A. at Beto; and (12) unnamed "Medical Staff" at Beto; and alleges that on March 17, 2020, the

---

[12] All CM/ECF references in Section III, unless otherwise noted, refer to entries in the docket of Civil Action No. 6:20-CR-566, from the Eastern District of Texas, available on PACER. Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (Courts "may properly take judicial notice of public record); Colonial Penns. Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

Plaintiff's constitutional rights were violated when he was deprived or health and safety "by way of defective or dangerous product (polluted water bottle)." ECF No. 14. The amended complaint alleges that on March 19, 2020, the Plaintiff "unknowingly ingested" the water sold by Brenda Plantt at the prison commissary. Id. at 6. The Plaintiff alleges that "[a]fter noticing and verifying affects [sic] Plaintiff informed Sgt. Dinia Green who deliberately disregard[ed] Plaintiff['s] health and safety by telling him to 'get out of [her] face.'" Id. The Plaintiff claims he then filed a grievance, "which was unanswered." Id. The Plaintiff claimed that because he was "feeling affects [sic] of dangerous product [was] placed in a sick cell." Id. On March 25, 2020, the Plaintiff was seen by Nurse Utende. He complained of lower back pain, from possibly contaminated water, and requested to be "thoroughly tested." Id. at 7. On or about April 28, 2020, P.A. Goins informed the Plaintiff of a medication plan. By May 26, 2020, the Plaintiff could not stand or walk, was in "excruciating pain," and had to be transported by stretcher. Id. On May 27, 2020, the Plaintiff needed a wheelchair to get to medical because of his pain from ingesting contaminated water. Id. Once there, he contends that P.A. Ciszewski "forcefully held [his] legs down although he complained of pain." Id.

Among other claims of wrongdoing, the Plaintiff asserts that: (1) Gorsuch and Wheat violated his constitutional right to health and safety and by their failure to supervise employees, including medical staff;  (2) Plantt acted with reckless disregard and gross negligence when she exposed him to the "unreasonable risk" of placing a defective or dangerous product into the stream of commerce, namely bottled water at the commissary; (3) Dinia Green subjected him to cruel and unusual punishment and by deliberately disregarding the Plaintiff's health and safety; (4) Defendants Utende, Goins,

14

Ciszewski, and medical staff violated his constitutional rights by deliberately disregarding the Plaintiff's health and safety, and inflicted pain and suffering for more than nine months. Id. at 8–9. For relief, the Plaintiff requested that the Court "[r]edress [him] of violated rights and injury of pain and suffering and physical injury by compensatory, punitive and nominal damages with reasonable attorney [sic] fees and costs and [ ] any other equitable relief." Id.

A Report and Recommendation was filed on March 24, 2023, and the District Court adopted the Report and Recommendation on May 1, 2023. ECF Nos. 46, 48. The Report and Recommendation found that "Plaintiff's claim suffers from a causation problem. Plaintiff has self-diagnosed his lower back pain and intestinal issues as being cause by drinking approximately 16.9 fluid ounces of purified, bottled water. A self-diagnosis, alone, will not support a medical conclusion." ECF No. 46 at 19. Further, it found that:

> Plaintiff has not alleged sufficient facts demonstrating that any Defendant violated his Eighth Amendment rights concerning his medical care. Construing Plaintiff's claim in the light most favorable to him, Nurse Utende, P.A. Goins, P.A. Ciszewski, and the Beto Unit Medical Staff have at most misdiagnosed Plaintiff's back pain and intestinal issues in their respective evaluations of his symptoms. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference.

Id. Moreover, the Report and Recommendation concluded that:

> Plaintiff's own statements in his Amended Complaint [ ] reveal that Plaintiff was evaluated by nurses and physician's assistants and received treatment for his pain, even though the pain was not alleviated. There is nothing in his Amended Complaint to support a conclusion that the Defendants refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct

that would clearly evince a wanton disregard for any serious medical needs. Overall, the facts as alleged in the Amended Complaint do not support a claim of deliberate indifference to Plaintiff's serious medical needs by Defendants. Plaintiff's medical deliberate indifference complaint fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact.

Id. at 20–21. The District Court adopted the Report and Recommendation on May 1, 2023. ECF No. 48.

The Plaintiff appealed to the Fifth Circuit Court of Appeals which on June 11, 2024, dismissed the appeal as frivolous. ECF Nos. 50, 69, 69-1.

## IV.    LEGAL STANDARDS

### A.    Review of Complaints

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and the Court's Local Rules of Prisoner Litigation Procedure, this Court is authorized to review such complaint and submit findings and recommendations to the District Court. This Court is charged to "hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss, . . . to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action."

### B.    Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, a complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in Neitzke recognized that:

Section 1915(d)[13] is designed largely to discourage the

---

[13] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided,

> filing of, and waste of judicial and private resources
> upon, baseless lawsuits that paying litigants generally do
> not initiate because of the costs of bringing suit and
> because of the threat of sanctions for bringing vexatious
> suits under Federal Rule of Civil Procedure 11. To this
> end, the statute accords judges not only the authority
> to dismiss a claim based on an indisputably meritless
> legal theory, but also the unusual power to pierce the
> veil of the complaint's factual allegations and dismiss
> those claims whose factual contentions are clearly
> baseless. Examples of the former class are claims
> against which it is clear that the defendants are immune
> from suit. . .

490 U.S. at 327.

### C.    Actions Under the Federal Tort Claims Act (FTCA)

The FTCA is a comprehensive legislative scheme by which the United States has

waived its sovereign immunity to allow civil suits for actions arising out of the negligent

acts of agents of the United States. The United States cannot be sued in a tort action

unless Congress has waived the government's sovereign immunity and authorized suit

under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provisions of

the FTCA are found in Title 28 of the United States Code. 28 U.S.C. §§ 1346(b),

1402(b), 2401(b) and 2671-2680.

In 2021, the Supreme Court issued a decision which summarized the historical

precedent which led to the enactment of the FTCA:

> The FTCA streamlined litigation for parties injured by federal
> employees acting within the scope of their employment.
> Before 1946, a plaintiff could sue a federal employee directly
> for damages, but sovereign immunity barred suits against

---

"The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

the United States, even if a similarly situated private employer would be liable under principles of vicarious liability. Despite that immunity, the Government often would provide counsel to defendant employees or indemnify them. In addition, Congress passed private bills that awarded compensation to persons injured by Government employees. But by the 1940s, Congress was considering hundreds of such private bills each year. Critics worried about the speed and fairness with which Congress disposed of these claims.

In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees acting within the scope of their employment. The Act in effect ended the private bill system by transferring most tort claims to the federal courts. Plaintiffs were (and are) required to bring claims under the FTCA in federal district court. Federal courts have jurisdiction over these claims if they are actionable under § 1346(b). A claim is actionable if it alleges the six elements of § 1346(b), which are that the claim be:

[1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.[14]

Brownback v. King, 141 S. Ct. 740, 746 (2021) (cleaned up and internal citations omitted).

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S.

[14] 28 U.S.C. § 1346(b)(1) provides, "[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

150 (1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

However, the FTCA does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). "The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id.

Even where the government has waived sovereign immunity, the FTCA only authorizes lawsuits against the United States itself. 28 U.S.C. § 1346(b). Therefore, the United States, not any government employee or agency, is the only proper defendant in an FTCA lawsuit. See 28U.S.C. 2679(a); Webb v. Hamidullah, 281 F. App'x 159, 161 n. 4 (4th Cir. 2008) (per curiam) (unpublished) (United States is the only proper defendant in FTCA claim); Holmes v. Eddy, 341 F.2d 477, 480 (4th Cir. 1965) (per curiam) (federal agency cannot be sued pursuant to the FTCA); Allfgeir v. U.S., 909 F.2d 869 (6th Cir. 1990) ("The FTCA clearly provides that the United States is the only proper defendant in a suit alleging negligence by a federal employee").

A constitutional civil rights claim is not cognizable in an FTCA lawsuit. FDIC v. Myer, 510 U.S. 471, 477-79 (noting that a constitutional tort claim is not cognizable in an FTCA lawsuit because the United States has not waived its sovereign immunity with respect to constitutional tort allegations); Blanchard v. United States, No. 2:14cv58, 2015 WL 4107311, at 13 (N.D.W. Va. July 7, 2015), aff'd 622 F. App'x 287 (4th Cir. 2015) (per curiam) (unpublished) (finding that a civil rights claim alleging a violation of

the Eighth Amendment prohibition against cruel and unusual punishment is not actionable against the United States in an FTCA lawsuit because a constitutional tort claim is not cognizable under the FTCA).

A number of statutory exceptions apply to the Federal Tort Claims Act, including an exception for any discretionary function, or for any damages related to establishment of a quarantine:

> The provisions of this chapter and section 1346(b) of this title shall not apply to--
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
>
> . . . .
>
> (f) Any claim for damages caused by the imposition or establishment of a quarantine by the United States.

28 U.S.C.A. § 2680.

### D. Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim

20

unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff's complaint was filed *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

 "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus,

a well-pleaded complaint must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

## V.    ANALYSIS

### A.    The Plaintiff Cannot Meet the Six-Part Brownback Test to Establish an FTCA Claim

As recognized by the Supreme Court in Brownback v. King, 141 S. Ct. at 746, an FTCA claim is actionable if it alleges the six elements of 28 U.S.C. § 1346(b), which are that the claim be: (1) against the United States; (2) for money damages; (3) for injury or loss of property, or personal injury or death; (4) caused by the negligent or wrongful act or omission of any employee of the Government; (5) while acting within the scope of his office or employment; (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Regardless of whether he can demonstrate that he meets some of the six prongs of the Brownback test, the Plaintiff cannot meet all of the prongs of the test as required.

22

Sgt. Dinia Green, Warden William J. Wheat, Warden Keith Gorsuch, Nurse Utende, P.A. Cynthia Goins, P.A., Steven Ciszewski, Beto Medical Staff, and George Beto Unit are not federal government employees who are responsible by their negligent or wrongful act or omission for injury or loss of property, or personal injury or as alleged by the Plaintiff. While the undersigned acknowledges that those individuals may be government employees of the **state of Texas**, none are employees of the **federal government**, the subject of the **Federal** Tort Claims Act. Moreover, the Plaintiff's filing a prior action under § 1983 in the Eastern District of Texas, alleging the same wrongdoing which he asserts here, demonstrates a tacitly admission by the Plaintiff that he knew the alleged wrongdoers were **state, not federal**, employees. Accordingly, the Plaintiff cannot meet the fourth prong of the <u>Brownback</u> test. For these reasons, the Plaintiff's complaint as to those state individuals or entities should be dismissed for failure to state a claim upon which relief may be granted.

Further, because none of those individuals or agencies are agents of the federal government, it is impossible for any of them to have been acting within the scope of their federal office or employment during the alleged wrongdoing. Accordingly, the Plaintiff fails to allege the facts necessary to allege a sufficient claim as to the fifth prong of <u>Brownback</u>.

As to the Plaintiff's contention that the Bureau of Prisons, Federal Tort Claims Act Staff, Hope L. Swann, and the United States Department of Justice violated his rights under the FTCA. It is undisputed that these individuals are federal employees, and the agencies are federal agencies. However, the only allegation against these federal employees and agencies is that the Plaintiff has not yet received a response to his

23

Standard Form 95, which seeks monetary damages under the Federal Tort Claims Act for the actions of Texas state employees. It is clear that, even liberally construed, Plaintiff's complaint fails to articulate the facts necessary to allege a successful FTCA claim against these alleged wrongdoers. The Plaintiff cannot demonstrate as to prong three, that he has incurred an injury or loss of property, or personal injury or death based on a perceived delay on the processing of a Standard Form 95. Further, the Plaintiff now complains that federal employees or agencies have failed to comply with their obligations under the FTCA to process his Standard Form 95 grievance. That allegation does not adequately assert a claim for injury or loss of property, or personal injury or death. Rather the claim merely asserts a delay in response. Even when construed liberally, the Plaintiff fails to state a claim under the FTCA because he fails to allege that he suffered an injury or loss of property, or personal injury or death as a result of any action or omission by these employees or agencies to satisfy prong 3 of Brownback.

To the extent that the Plaintiff argues that those federal employees or agencies violated his Eighth Amendment rights by failing to provide him with adequate medical care, he fails to explain how his medical treatment at the state prison, Beto Unit, fell below the applicable standard of care, or how any of the actions or inactions **of any federal employee** proximately caused him any injury. For all these reasons, the Plaintiff fails to state a claim under the Federal Tort Claims Act upon which relief may be granted, and his complaint should be dismissed with prejudice.

### B.    Plaintiff's Request for Default Judgment

The Plaintiff's complaint seeks an entry of default against the United States

based on the failure to "act in performance" related to his filing of an administrative remedy. ECF No. 11 at 10.

Standard Form 95, entitled "CLAIM FOR DAMAGE, INJURY, OR DEATH," is prescribed by the Department of Justice, pursuant to 28 C.F.R. § 14.2. See https://www.gsa.gov/system/files/SF95-07a.pdf. The form instructions direct that, "[c]laims presented under the Federal Tort Claims Act should be submitted directly to the 'appropriate Federal agency' whose employee(s) was involved in the incident. . . " Id.

Final denial of a claim submitted under the Federal Tort Claims Act is governed by 28 C.F.R. § 14.9, which provides:

> (a) Final denial of an administrative claim shall be in writing and sent to the claimant, his attorney, or legal representative by certified or registered mail. The notification of final denial may include a statement of the reasons for the denial and shall include a statement that, if the claimant is dissatisfied with the agency action, he may file suit in an appropriate U.S. District Court not later than 6 months after the date of mailing of the notification.
> (b) Prior to the commencement of suit and prior to the expiration of the 6–month period provided in 28 U.S.C. 2401(b), a claimant, his duly authorized agent, or legal representative, may file a written request with the agency for reconsideration of a final denial of a claim under paragraph (a) of this section. Upon the timely filing of a request for reconsideration the agency shall have 6 months from the date of filing in which to make a final disposition of the claim and the claimant's option under 28 U.S.C. 2675(a) shall not accrue until 6 months after the filing of a request for reconsideration. Final agency action on a request for reconsideration shall be effected in accordance with the provisions of paragraph (a) of this section.

Further, 28 C.F.R. § 14.11 provides that, "[e]ach agency is authorized to issue regulations and establish procedures consistent with the regulations in this part."

Pursuant to 28 C.F.R. part 14, the Bureau of Prisons adopted Program

Statement 1320.07 related to the Federal Tort Claims Act. https://www.bop.gov/policy/progstat/1320.07.pdf. Program Statement 1320.07 cites to the Code of Federal Regulations to support each of the provisions within the Program Statement. Citing to 28 C.F.R. § 543.31, Program Statement 1320.07, subpart 3, provides:

> Employees will provide a SF-95, Claim for Damage, Injury, or Death form, which is available on the public U.S. General Services Administration (GSA) website in the GSA Forms Library and on the Employee Resources page of the Bureau intranet.
>
> A claim may be filed without a SF-95, Claim for Damage, Injury, or Death form. However, the claimant should provide all the following information:
>
> ■ date of incident
> ■ place where the incident occurred
> ■ explanation of events
> ■ names of witnesses
> ■ description of injury or property loss
> ■ date of claim
> ■ sum certain claimed (required)
> ■ claimant's signature (required)
>
> Inmates should obtain forms from employees at the institution where they are incarcerated.

https://www.bop.gov/policy/progstat/1320.07.pdf at 3–4. Subpart 3 explains the process for presenting a claim, pursuant to 28 C.F.R. § 543.31(c). Id. at 4. Subpart 4 of the Program Statement, related to processing the claim, quotes 28 C.F.R. § 543.32, and directs that after the claim is received by the appropriate agency office, an Institutional Investigation will be conducted, and an Investigation Report prepared. Id. at 4–6. If a claimant is "dissatisfied with the final agency action, [he] may file suit in an appropriate United States District Court, as no further administrative action is available." Id. at 7,

quoting 28 C.F.R. 543.32(f). Further, pursuant to the Program Statement, "[a]ll denial letters must be sent via certified or registered mail. The denial letter must state that if the claimant is dissatisfied with the denial, they may file suit in the appropriate District Court within six months after the mailing of the denial." Id. at 7. Finally, the Program Statement quotes 28 C.F.R. 543.32(h), which provides:

> ***Response timeline.*** Generally, you will receive a decision regarding your claim within six months of when you properly present the claim. **<u>If you have not received a letter either proposing a settlement or denying your claim within six months after the date your claim was presented, you may assume the claim is denied.</u>** You may then proceed to file a lawsuit in the appropriate United States District Court.

https://www.bop.gov/policy/progstat/1320.07.pdf at 7, underlined emphasis added.

Pursuant to 28 U.S.C. § 2675(a):

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. **The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.**

28 U.S.C. § 2675(a) (emphasis added).

The Plaintiff contends that he is entitled to default judgment because he did not receive a response to his Standard Form 95 Claim for Damage, Injury or Death for more than 669 days. ECF No. 11 at 8. However, a review of 28 U.S.C. § 2675(a) is dispositive. That statute provides that, "[t]he failure of an agency to make final

disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." Accordingly, pursuant to the statute, after the Plaintiff failed to receive a final disposition within six months after filing his claim, he was entitled to deem that his claim was denied. At that time, the Plaintiff was entitled to proceed with an action under the FTCA in the appropriate United States District Court. This result is also dictated by 28 C.F.R. § 543.32(h), which provides in part that, "**If you have not received a letter either proposing a settlement or denying your claim within six months after the date your claim was presented, you may assume the claim is denied.** You may then proceed to file a lawsuit in the appropriate United States District Court." (Emphasis added.) Further, BOP Program Statement 1320.07 quotes 28 C.F.R. § 543.32(h) in regard to timeliness of disposition.

Accordingly, based on the clear language of the statute, regulation, and program statement, the Plaintiff was entitled to deem his claim asserted on Standard Form 95 to be denied after six months without a response or disposition. The statute does not authorize default judgment against the Government based on a failure to respond to an administrative claim within six months. Rather, the statute specifies that the Plaintiff's remedy at that time was to file suit under the Federal Tort Claims Act for the violations which were alleged in his administrative claim. For all of these reasons, the Plaintiff's request for default judgment is without authority, and should be denied and dismissed with prejudice.

C.    **Res Judicata**

Further, even if the Plaintiff met all six prongs of the <u>Brownback</u> test, he is

precluded from relief under the FTCA because he previously raised these same claims in the Eastern District of Texas, case number 6:20-CV-566, ECF No. 14. To the extent that the Plaintiff alleges that BOP[15] employees' actions were negligent as related to his need for medical treatment after allegedly ingesting contaminated bottled water, the Plaintiff has already raised these claims in a civil rights complaint filed in the Eastern District of Texas pursuant to § 1983. The District Court in that case found that the claims were frivolous and dismissed the action. The claims raised in the instant FTCA case mirror the substance of the claims asserted in his § 1983 motion.

Res judicata bars litigation of all claims or defenses that were available to the parties in the previous litigation, regardless of whether they were asserted or determined in the prior proceeding. See Brown v. Felson, 442 U.S. 127, 131 (1979) ("Res judicata thus encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes"). Further, in Meekins v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir. 1991) the Fourth Circuit held:

> The preclusive [e]ffect of a prior judgment extends beyond claims or defenses actually presented in previous litigation, for 'not only does res judicata bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'

The elements required for res judicata to apply are: "(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action." Coyne v. Delaney Co. v. Selman, 98 F.3d 1457, 1473 (4th Cir. 1996).

---

[15] For sake of argument, the undersigned will consider that the Plaintiff properly raised claims against BOP employees, although he has clearly stated that the alleged wrongdoers are employees of the Texas Department of Criminal Justice.

In the instant case it is clear that res judicata bars Plaintiff's FTCA complaint. The claims raised in his FTCA complaint are identical to those filed in his § 1983 complaint in the Eastern District of Texas, case number 6:20-CV-566. There, the Plaintiff's claims of deliberate indifference to the Plaintiff's serious medical needs by Defendant Utende, Goins, Ciszewski, and the Beto Unit Medical Staff, were found to be frivolous and were dismissed based on the failure to state a claim upon which relief may be granted. 6:20-CV-566, E.D. Tex. 6:20-CV-566, ECF Nos. 46 at 21, 48. Those claims, that the Plaintiff was injured after consuming contaminated bottled water at the Beto commissary, are the same claims raised in the Plaintiff's FTCA complaint, and list many of the same alleged wrongdoers. Moreover, on appeal, the Fifth Circuit affirmed the decision rendered by the Eastern District of Texas, and found that the appeal was frivolous. 6:20-CV-566, ECF Nos. 69, 69-1. Accordingly, the Plaintiff is precluded from raising those same claims in this action under another provision of federal law. For all these reasons, the Plaintiff cannot re-litigate his allegations regarding deliberate indifference to his medical care at a Texas state prison, and his current FTCA action should be dismissed as frivolous as he has no chance of success.

## VI.    RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's complaint as to the United States of America be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted.

It is further **RECOMMENDED** that Defendant's motion to dismiss [ECF No. 34] be **GRANTED**.

Further, it is **RECOMMENDED** that the Plaintiff's complaint be deemed

**FRIVOLOUS**, because: (1) there is no liability for state employees under the Federal Tort Claims Act; and (2) the same underlying facts have already been raised in the Eastern District of Texas, where relief was denied and the claim deemed frivolous, and the Court of Appeals for the Fifth Circuit affirmed that decision.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District

Court for the Northern District of West Virginia.

DATED:        October 3, 2024

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE